CHARLES P. BRIGHTMAN, executor, *vs.* JOSEPH L. BUFFINGTON, JR. & another, administrators.

Bristol. October 27, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Evidence,* Competency.

On the question whether monthly payments made by a son to his mother, for which the mother gave receipts in writing, were payments upon a note of the son held by the mother or were gifts, the son and mother both being deceased at the time of the trial, a witness was allowed to testify without objection that the mother, after the death of the son, refused to accept from the administrator of the son's estate the balance of the note after deducting such payments, on

the ground that she understood that the payments of the son were gifts to her. *Held*, that although this evidence of the understanding of the mother could not have been admitted if objected to, yet having been admitted without objection it became evidence to be considered by the jury. *In this case*, however, there was independent evidence of declarations of the mother that the money paid by her son was a present, that she had settled with him, and that she was not indebted to him at all.

CONTRACT, by the executor under the will of Rebecca L. Brightman, against the administrators of the estate of Frank W. Brightman, son of Rebecca, on a promissory note given to the mother by the son.   Writ dated August 5, 1902.

The answer and declaration in set-off alleged payment of $1,235 as stated by the court.

At the trial in the Superior Court before *Fox*, J., it appeared that Frank W. Brightman was the treasurer of the Stafford Mills in Fall River for a number of years before the time of his death, which occurred on March 1, 1901.   His mother, Rebecca L. Brightman, died after a long illness on July 24, 1901, aged seventy-six years.   Before his death, and up to the time of his father's death, which occurred on August 27, 1900, Frank W. Brightman, with his brother, the plaintiff, managed the business affairs of his father and mother, who lived in Fall River and possessed each a small estate.   He took charge of their money, giving them his personal notes for it, loaned the money, and paid them interest at market rates.   He gave two notes to his father, and one of $3,200, dated July 12, 1897, to his mother for money thus taken by him, which was the note declared on.   Mrs. Grouard, mentioned by the court, was a sister of the plaintiff's testatrix and was called as a witness by the plaintiff.

The judge refused to give two rulings requested by the defendants which are stated by the court.   The jury returned a verdict for the plaintiff in the sum of $3,609.60, the full amount of the note with interest; and the defendants alleged exceptions.

*L. E. Wood*, for the defendants.

*C. R. Cummings*, (*J. W. Cummings* with him,) for the plaintiff.

LORING, J.   This is an action on a promissory note in the sum of $3,200, made by the defendants' intestate payable to his mother.   The only defence set up was payment for all but $1,987, and the facts relied on in support of this defence were also made the subject of a declaration in set-off.   In the declara-

tion in set-off the defendants counted on twenty-three payments of $50 each, for which the defendants produced receipts signed by the mother. These receipts stated in terms or in substance that the money had been received and was to be charged to her account. In addition, the defendants produced receipts, signed by a nurse or nurses who took care of the mother, for $85, the balance of the sum declared on in set-off. The plaintiff's answer to the declaration in set-off was that these sums were paid to the mother by way of a gift. The case is here on two requests for instructions to the jury which were refused. One was a request that there was no evidence warranting a finding that any of the payments stated in the declaration in set-off were intended by the son as a gift, and the other was a request that there was no evidence warranting a finding that any of the payments made after June 27, 1899, that is, any but the first five, were intended by the son as a gift.

It is not necessary to state the case at length, as we are of opinion that there is one piece of evidence which is decisive of both requests. After the son's death, one of his administrators tendered the mother, who was then alive but who died before this action was begun, the balance due on the note now in suit, after deducting the sums set forth in the declaration in set-off. This was refused by her on the ground (so one of the defendants testified) that she understood that the money paid to her by the son who signed the note was a gift to her.

The contention of the administrators of the son is that this evidence as to what the mother understood is not evidence of what the son intended ; that the fact that the mother understood that the payments were made by way of gift, does not warrant a finding that the son intended to make them as a gift, and that except for this statement the uncontradicted evidence showed that the intent of the son was to be paid for these advances ; that this was known to the mother and could not be defeated by this subsequent statement, made after his death, as to her understanding.

No objection was made to this evidence of what the mother understood and thereby it became evidence, (*Damon* v. *Carrol*, 163 Mass. 404, *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, *Allen* v. *Fuller*, 182 Mass. 202,) although it was not com-

petent.   If an objection had been made, it could not have been admitted.

But the difficulty with the defendants' argument is that although the testimony of the defendant Buffington was that the mother at that time said that she understood it was a gift, Mrs. Grouard, who was also present, testified that the mother then said that the $1,235 was a present; that she thought she did not owe Frank anything; that she had settled with him. She also testified that a number of times after that the mother said she was not indebted to him at all.   However improbable the fact that the son intended these payments to be made by way of gift when other evidence in the case is considered, this testimony gave the jury the right to believe that it was so.

*Exceptions overruled.*