## A. B. BOTKIN *vs.* JACOB W. MILLER & others.

Suffolk.    November 20, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Practice, Civil,* Exceptions.    *Trespass.    Evidence.    Damages.*

Where a bill of exceptions does not state that it contains all the material evidence
and where the charge of the presiding judge is made a part of the bill of excep-
tions, this court may have recourse to the charge of the judge to obtain material
facts not otherwise stated.

In an action by a man of the Jewish faith, the proprietor of a barber's shop, against
several persons also of the Jewish faith for gathering with others in front of the
plaintiff's shop on a certain evening, ordering him to close his shop, and on his
refusing to do so threatening him, throwing missiles into his shop and prevent-
ing customers from entering, whereby it was alleged that the business of the
plaintiff was injured and finally destroyed, the defendants testified that as they
were returning to their homes from worship they found a crowd opposite the
plaintiff's shop and that they took no part in the disturbance.    The defendants,
against the objection and exception of the plaintiff, were allowed to show that
the day in question was kept by the so called Orthodox Jews as a holiday on
which no business was done by Orthodox Jews.    *Held,* that the evidence was
competent in connection with the testimony of the defendants mentioned
above to explain, if the defendants' story was true, the fact that they found the
crowd around the plaintiff's shop, and also was competent as an explanation of
the plaintiff's loss of business from a cause not arising from the acts of
trespass.

In an action by a man of the Jewish faith, the proprietor of a barber's shop, against
several persons also of the Jewish faith for gathering with others in front of
the plaintiff's shop on a certain evening, ordering him to close his shop, and on
his refusing to do so threatening him, throwing missiles into his shop and pre-
venting customers from entering, whereby it was alleged that the business of
the plaintiff was injured and finally destroyed, there was evidence, held to have
been admitted properly, that the day in question was kept by the so called
Orthodox Jews as a holiday on which no business was done by Orthodox Jews.
It appeared that the disturbance did not last more than one hour and that after
that the shop was kept open during the remainder of the evening, and there
was no evidence from any customer that he ceased to patronize the shop be-
cause of fear that the disturbance would be repeated.    The presiding judge
instructed the jury that if they found that the defendants participated in any
acts of violence or in any trespass upon the shop, the plaintiff might recover
such damages as the defendants actually inflicted upon the premises and such
loss of custom on the night of the disturbance as they might find that the
plaintiff had sustained by any interference with his business, but instructed
them to disregard any evidence of loss of business after the night of the dis-
turbance as there was " no natural connection " between such loss and the dis-
turbance of that evening.    *Held,* that the instructions were correct; that the
evidence did not go far enough to show that the disturbance was the cause of the

plaintiff's subsequent loss of business, it being at least as likely that the loss occurred from his customers of the Jewish faith leaving him for keeping his shop open on a day when no business is done by Orthodox Jews.

TORT against the defendants hereafter named. Writ dated September 21, 1901.

The declaration as amended was as follows :

" And the plaintiff says that on or about the twelfth day of December last, he was proprietor of a barber shop at 151 Chelsea Street in that part of Boston known as East Boston, in which he conducted the business of a barber ; and that, on or about 7.30 o'clock in the afternoon of said day, the defendants gathered in front of said shop and demanded him to close said shop and discontinue and stop doing any business; that he refused to comply with their demands, and that, thereupon, the defendants called upon a large number of people who were standing in the street outside of and in front of said shop, directing them to close said shop by force, if necessary ; that the defendants and the people in the street, standing in front of said shop, prevented customers from entering said shop for the purpose of availing themselves of the services of the plaintiff and his employees ; and, that the defendants, or those standing outside of said shop, instigated by said defendants, did prevent customers from entering said shop to avail themselves of the services of the plaintiff and his employees ; and that the defendants in other ways incited those standing outside of said shop to lawless acts, and drove from said shop those customers who had already entered it for the purpose of availing themselves of the services of the plaintiff and his employees, and by reason of the aforesaid acts of said defendants the business of the plaintiff was damaged and greatly injured which damage and injury has continued until this day and said business has thereby been destroyed."

In the Superior Court the case was tried before *Fox*, J.

The following statement of the case is taken from the opinion of the court:

The declaration in this case is in substance a declaration for trespass *quare clausum fregit* and for an interruption to the business of the plaintiff. There were four defendants: Jacob W. Miller, Louis Miller, Abraham Eskin and A. Zaplan. At the trial there was evidence introduced by the plaintiff that he

carried on the business of a barber at a shop in East Boston, and that at seven o'clock on the evening of September 4, 1901, the defendants and "several hundred others" gathered in front of the plaintiff's shop, in the plaintiff's absence; that the defendant Zaplan went into the shop and into the tenement of the plaintiff over the shop, looking for the plaintiff, and while in the tenement said "they were going to lynch him"; that the defendant Miller then called out to the crowd, "Smash the premises; I will pay the damages," and that all the defendants urged the crowd "to close up the shop." The plaintiff also showed that "missiles such as mud, banana stalks, peels, a brickbat, were thrown in the shop." The police were called and the crowd was dispersed about eight o'clock. The plaintiff further introduced evidence that he had carried on the business of a barber, with two or more assistants, at the shop for six years, and that his profits were $30 and more a week. It appeared that the shop remained open on the evening in question until midnight, and was open thereafter until the plaintiff moved away ; and that from the evening in question the business of the plaintiff declined until in about six weeks he moved away from lack of customers. It is stated in the bill of exceptions as an admitted fact that the plaintiff was "a naturalized citizen of the Jewish faith." It is also stated that: "The defendant is a naturalized citizen of the Jewish faith. Both the plaintiff and the defendant had been friends until about two years before the event stated in the declaration, when some difference had occurred." We do not know whether this statement was meant to apply to all four defendants, or, if not to all four, to which of the four. It also appeared that the plaintiff "had many customers of the Jewish faith, as well as others prior to the riot."

The defendants were allowed to introduce in evidence the fact that the day in question, September 14, 1901, "was kept as a holiday by the so called Orthodox Jews, and, on that day, no business was done by Orthodox Jews, although it was stated that Jews, of reputable standing, in Boston and East Boston, kept open store and business on that day." To this the plaintiff took an exception.

The presiding judge instructed the jury to disregard the allegation of the declaration "that by reason of the aforesaid acts,

the business of the plaintiff was damaged and greatly injured, which damage and injury has continued until this day, and said business has thereby been destroyed," on the ground " that there is nothing in the evidence which would indicate any probable connection between the acts on September 14 and subsequent loss of business, if there was any. And I perhaps may illustrate what my meaning is. Supposing I, being a strict observer of the Lord's day, should find you, Mr. Foreman, selling newspapers upon that day, and I should go into your shop and by various foolish acts try to stop you in the sale upon that day; and supposing others of your neighbors, like myself being inclined to a strict observance of the day, should express their disapproval of your conduct in another way, that is, by abstaining from custom, by refusing to buy from you, either on week days or on Sunday; now any loss of custom from them, or by their acts couldn't be imputed to me, in the absence of any evidence that I had gone around among your customers urging them not to buy from you. The only allegation here, as I say, relates to acts for this day.

"There is no evidence from any customer that he ceased to trade or to do business in this shop, because of fear that this disturbance of that night would be repeated, and, therefore, as I say, I instruct you that you should disregard any evidence of loss of business after this day, because there is no natural connection between them and the disturbance of that evening." As to the damages, the judge told the jury that "If you find that these defendants participated in any acts of violence or any trespass upon this store, the damage should be such damage as they actually inflicted upon the premises, such loss of custom on that night as you find the plaintiff may have sustained by any interference with the business; and if you find that the acts for which the defendants are responsible were of such a character as to amount to an indignity upon the plaintiff, to injure his feelings, you have a right to take that into account."

The plaintiff conceded that no case had been made out against Eskin, and the jury, under the direction of the judge, found a verdict in his favor. The other verdict was as follows: "The jury find for the plaintiff and assess damages in the sum of Three Dollars as against Jacob W. Miller, Louis Miller and A. Zaplan."

The case is here on the plaintiff's exceptions.

*H. Dunham,* (*J. W. Sherman* with him,) for the plaintiff.

*B. G. Davis,* for the defendants.

LORING, J. [After the foregoing statement of the case.] The bill of exceptions is very meagre, and there is no statement in it that it contains all the material evidence. Under these circumstances it is proper to have recourse to the charge of the presiding judge, which is made part of the bill of exceptions, in order to understand the case before the court.

In his charge the presiding judge, after telling the jury that the loss of business was too remote, proceeded as follows: "Now, so far as the disturbance of that evening is concerned, the plaintiff is quite right in saying that if the defendants took part in that disturbance, if there was a disturbance and the defendants took part in it, it is immaterial what their motive was, whether it was a religious motive or what it was; that no body of men have a right by force to impose their views upon any other body of men, by compelling them to close their shops. And if these defendants, or any of them, took part in acts of violence and acts of trespass upon that night, they are responsible. And that is the question for you to consider, whether they did or whether they did not.

"It is contended on the part of the plaintiff that there is evidence tending, if believed, to show that the defendants, or some of them, made use of incendiary language on that night, and that various missiles were thrown into the open door of that shop, such as banana skins and lumps of mud, and I think a brickbat; that various people went into the shop and jostled the barbers while engaged in their business. It is not contended, and I do not understand that there is any evidence that there was any very great material damage done to the furniture, fittings of the shop. I do not understand that it is claimed that any glass, for instance, was broken or that any furniture was broken; and it appears that the shop did, in fact, keep open that night until the usual hour, and that it was opened on succeeding days. There is no evidence that if any threats of violence were made against the proprietor of that shop he was so far intimidated by them as to abandon his shop and refuse because of fear to keep it open on subsequent dates. The evidence offered on the part of the policemen who were called there is that they found a gathering

of women and children upon the sidewalk nearest the shop ; that they found a gathering of men upon the opposite sidewalk or in the street ; that they saw no evidence of a disturbance inside of the shop, and I think they say they saw no evidence of violent acts or violent speech outside the shop ; that they ordered the group to disperse and it dispersed, and then the officers went home. The evidence offered upon the part of the defendants is that they were returning from their place of worship, through that street, one of them lived across the street ; that they saw this gathering ; that they saw no violence and that they took part in no disturbance. Now, gentlemen, it is obvious in this case that there is a considerable conflict in the testimony, and it is for you to resolve that conflict."

1. In our opinion, the evidence admitted against the objection and under the exception of the plaintiff was competent (first) on the question of liability, and (second) on the question of damage. It was competent in connection with the defendants' story that they found the crowd opposite the plaintiff's shop as they were returning to their homes from worship, and that they took no part in any disturbance. The evidence explained the crowd's being around the plaintiff's shop, if the defendants' story was true. We think it competent also on the question of damages, as an explanation of the plaintiff's loss of business.

2. The ruling of the judge as to loss of business was in our opinion correct. The plaintiff did not go far enough to show that this disturbance was the cause of his loss of business. It lasted not more than an hour ; it did not in fact cause the shop to be closed that night, and "there is no evidence from any customer that he ceased to trade or to do business in this shop, because of fear that this disturbance of that night would be repeated." See in this connection *Zinn* v. *Rice*, 161 Mass. 571. On the evidence in the case it is at least as likely that the loss of business came from his customers of the Jewish faith leaving him for keeping open shop on a day when no business is done by Orthodox Jews. See *Crowell* v. *Moley*, 188 Mass. 116.

We find nothing in the other cases cited by the plaintiff to the contrary. *Marsh* v. *Billings*, 7 Cush. 322. *Carew* v. *Rutherford*, 106 Mass. 1. *Morasse* v. *Brochu*, 151 Mass. 567.

*Exceptions overruled.*