FRANK I. WHITCOMB *vs.* EMMA E. WHITCOMB, executrix.

Middlesex.   March 9, 1914.— May 21, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Evidence,* Of rescission of contract, Admissions by conduct, Opinion, Declarations of deceased persons. *Contract,* Rescission. *Practice, Civil,* Exceptions. *Interest.*

At the trial of an action by a son against the executor of the will of his father upon a contract in writing of the father to pay the son a certain portion of a salary which the father was receiving from a corporation in which both were interested, the defendant contended that the contract had been rescinded by mutual consent. There was no direct evidence of such consent. The plaintiff admitted that, some time after the last payment made to him on account of the contract, he fell into necessitous circumstances and sought and obtained pecuniary assistance from his father, and the defendant was allowed to introduce in evidence correspondence between the parties as tending to show that the father was acting entirely as the son's benefactor and not as his debtor. He also offered two letters from the father to the son and a third from the son to the father, which were excluded, dated in the fourth year after the last payment on account of the contract, the first letter being in response to solicitations of the son for money and containing a refusal to pay back debts coupled with an expression of willingness to help with current expenses; the second letter containing an argument that the plaintiff's son, whom the defendant's testator was supporting in a private school, should be taken home by the plaintiff and placed in a public school; and the third letter being a general statement by the plaintiff of his financial situation as to his assets and liabilities, written in reply to a letter from his father discussing bankruptcy, and containing no mention of any claim against the father. *Held,* that the letters should have been admitted as showing a course of dealing between the parties entirely inconsistent with the relation of debtor and creditor.

In the same action, the plaintiff, testifying in rebuttal, further admitted the help solicited by him from his father and given by his father, but testified that he never waived his claim against his father, but that on two occasions he had demanded of his father payments on account thereof, which were refused; and it was *held,* that the exceptions to the exclusion of the first and second letters mentioned above should be overruled, because the evidence they contained was merely cumulative and might have been excluded in the judge's discretion; but that the exception to the exclusion of the third letter should be sustained, because the evidence it contained was not cumulative, and its exclusion was prejudicial to the defendant.

In the same action it was *held* that a will and codicil of the father, tending to show that he did not consider himself indebted to his son, the will being dated about a month before and the codicil nearly three years after the last payment

by the father on account of the contract; and a letter of the father to a third
person dated previous to such last payment, in which he stated that the agree-
ments made with his son were "abrogated not only in a disagreeable but an
offensive manner," properly were excluded, as being at best mere expressions
of opinion of the father, and not declarations made upon the personal knowl-
edge of the declarant, admissible in evidence after his death under R. L. c. 175,
§ 66.

Where, at the trial of an action upon a contract in writing by the defendant to
pay to the plaintiff a certain sum for a year by monthly payments, it appeared
that the defendant had ceased making payments several months before the
end of the year and that the action was not brought for several years after-
wards, an instruction to the jury that, if the plaintiff was entitled to recover,
he was entitled to interest from the end of the year during which the payments
were to be made, was sufficiently favorable to the defendant.

CONTRACT against an executrix upon a contract in writing
made by the defendant's testator with the plaintiff, his son, set
out below.    Writ dated May 25, 1911.

In the Superior Court the case was tried before *Stevens,* J.
There was evidence tending to show that the defendant's testator
and one Raymond and one Neville were stockholders, and that
the plaintiff was an employee, of the Raymond and Whitcomb
Company, a corporation, that the plaintiff procured by purchase
the stock of Neville and part of that of the defendant's testa-
tor and that, having thus become the controlling stockholder, he
was about to declare a dividend of thirty-three and one third per
cent and to use the proceeds to pay in part a note he had given
to procure funds to purchase the stock.    The defendant's testa-
tor objecting, after a conference it was arranged that a dividend
of only ten per cent should be declared, that the plaintiff should
"vote Mr. Raymond out so that he [the defendant's testator]
would not have to be associated with him any further," should
give to his father a note for $13,910, and that his father should
make with him the contract which was the basis of this action
and was as follows:

"Whereas the Board of Directors of the Raymond & Whit-
comb Company have this day voted to pay me an annual salary
amounting to Seven thousand five hundred Dollars ($7500.)
in equal monthly payments.

"Now, know all men by these presents, that I, I. A. Whit-
comb, for and in consideration of the sum of One Dollar to me in
hand paid by Frank. I. Whitcomb, the receipt whereof is hereby
acknowledged, have granted, assigned and set over and by these

presents do grant, assign and set over unto the said Frank I. Whitcomb of the City, County and State of New York, out of the above named salary paid to me by the Raymond and Whitcomb Company the sum of Five thousand Dollars ($5000.) to be paid by me upon receipt of the same from the Raymond & Whitcomb Company.

"In witness whereof I have hereunto set my hand and seal this twenty-ninth day of April, in the year One thousand nine hundred and two.

(Signed)     Irvine A. Whitcomb.     [Seal]"

The execution and delivery of the contract were admitted. At the close of the evidence, the judge ruled that under the circumstances the plaintiff could recover the $5,000 for one year only, less the amount of certain payments which had been made on account, $2,499.60. The last of such payments was made on November 14, 1902.

The case was submitted to the jury solely on the question whether the contract had been rescinded or abandoned. Material portions of the evidence are described in the opinion.

A material paragraph in the letter of March 2, 1906, referred to in the opinion and which began "My dear Frank," was as follows: "Have thought the matter over considerably and cannot, with all the expenses that have been incurred, which has taken 'cold cash' from me, see why I should pay your back bills, considering what I have let you have since August, what I am sending you weekly and Junior's expenses, it amounts to quite a sum. You state this would give you 'peace of mind.' Realize fully what that means but it strikes me in a very tender place that if this is all that you require for 'peace of mind' you are easily satisfied considering my memories of the past which come to me daily in a very painful manner."

"Junior," referred to in the above letter, was the plaintiff's son, whose expenses at a private school the defendant's testator was paying.

The first paragraph of the letter dated July 23, 1906, referred to in the opinion, was as follows: "My dear Frank: — It is now about time to solve the problem regarding the coming season for yourself and family. Have been under the impression that you wanted to continue your residence in Central Valley on account of

your suit with Burr but if later you are to assign this it will make no difference about keeping your residence in the present place." The remainder of the letter was an argument to the effect that the plaintiff's son should be taken from a private school and should attend a public school, and contained the following paragraph: "It seems to me that you could live with your family in an apartment, where Junior could attend some good public school and he would live at home and at his age he needs the care ' of his parents as his morals are fully as important as his education. It is of the utmost consequence that he be truthful and avoid deceptive habits. In my statement to you that I would educate Junior did not expect that I was obliged to care for your whole family, including your wife's sister."

The letter of November 16, 1906, referred to in the opinion, began as follows: "My dear Father: — Answering your letter received Monday, I note what you say about going through bankruptcy. When you asked me for a list of my debts I gave you one that included *everything,* but my debt to Johnstone is purely a technical one. I gave him some notes as a first step in a transaction we were in together which was never fully completed and it rested there when we broke off and I did not see him again. I do not in reality owe him anything more than a hundred dollars and I think I can recover the notes with that amount." There followed a discussion of various claims against the plaintiff and in favor of the plaintiff against others, but there was no mention of any claim against the defendant's testator. The closing sentences were as follows: "I hope you all keep as well as usual and please give my love to those at home who still care for it. Thank you, Father, for checks received. Your son Frank."

The will and codicil, referred to in the opinion, were executed by the father, respectively on October 7, 1902, and September 23, 1905.

Other material facts are stated in the opinion.

The defendant asked the judge to rule that, if the plaintiff could recover, he could recover only the balance unpaid under the contract, $2,500.40, with interest from the date of the writ. The judge refused so to rule, and instructed the jury as follows: "Perhaps it is well enough to call it $2,500. If the plaintiff is

entitled to recover, if there has been no rescinding of the contract, then he is not only entitled to recover that, but he is entitled to recover six per cent interest from the time the contract was payable. It was payable, under the terms of the contract, when the money was received from the Raymond Company. The money was to be received in monthly instalments, and that would involve a great deal of figuring: so I instruct you that you may start from the first day of May, 1903. If the plaintiff is entitled to recover you will find a verdict for $2,500 with interest at the rate of six per cent from the first day of May, 1903, up to to-day."

In answer to a question specially submitted to them, the jury found that the contract was not rescinded, and found for the plaintiff in the sum of $3,968.75. The defendant alleged exceptions.

*F. L. Norton,* (*W. A. Ladd* with him,) for the defendant.

*E. R. Anderson,* (*G. A. Sweetser* with him,) for the plaintiff.

BRALEY, J. The defendant having admitted the making of the contract, on which after deducting payments a balance remained due, unless it had been mutually rescinded, the only issue tried and submitted to the jury was the question of rescission, with the burden on the plaintiff of proving an enforceable agreement. *Graham* v. *Middleby,* 185 Mass. 349.

The testator and promisor was the plaintiff's father, and their business and paternal and filial relations in controversy range over a period of more than five years, ending only with the father's death. The undisputed testimony shows that from time to time the testator had furnished to the plaintiff or on his account, exclusive of the first four instalments accruing under the contract, various sums of money exceeding in the aggregate much more than the balance alleged to be due. But as these amounts are conceded to have been paid or advanced either as loans or as gifts when the plaintiff had fallen into necessitous circumstances, the defendant relied upon the general course of dealing for the entire period shown by the plaintiff's testimony, and certain letters which passed between father and son, as being wholly inconsistent with the claim, that at the testator's death the contract was binding, and as affording sufficient evidence to warrant the inference by the jury that it had been mutually abrogated or

cancelled. It does not seem to have been denied, the plaintiff indeed admitted, that after the date of the contract and after his severance from the company in whose management in some form the testator seems to have exerted a controlling influence, he fell into distress and solicited and received pecuniary assistance.

The record is apparently bare of any direct evidence of a mutual understanding to do away with the contract either before or after maturity. Its abrogation could be established only from evidence illustrative of the conduct of the parties, from which their intention and purpose might be gathered. The jury from their common knowledge and experience as men of affairs would have been warranted in finding that ordinarily the plaintiff would not have asked for, and obtained, his father's help where the gifts bestowed often were too small to supply adequately his immediate needs, if he had the unqualified right to insist upon and to enforce payment of an amount more than sufficient for his relief. *Cogswell* v. *Hall,* 185 Mass. 455, 457, 458. It is manifest that the circumstances under which the parties dealt could be shown by their correspondence, and the letters introduced in evidence without objection were competent for this purpose. The jury were to determine upon all the evidence, both oral and in writing, whether the plaintiff, as he testified, made demands for payment which do not appear in the correspondence, or whether, read in the light of his situation, the letters substantially outline all of their actual financial transactions. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89, 95. *Brewer* v. *Casey,* 196 Mass. 384, 388. We are unable, upon a careful perusal, to distinguish any material difference in relevancy of proof between these letters and certain of the letters to the exclusion of which the defendant excepted. The plaintiff's own testimony sufficiently shows that while living in Central Valley, New York, money had been sent for his support, and the letter of the testator of July 23, 1906, referring to further provision for his son for "the coming season," as well as the letter of March 2, 1906, the jury could find were in response to the plaintiff's previous solicitations or in recognition of understood relations between them. These letters were admissible. The excluded portion of the letter of the plaintiff of November 16, 1906, also should have been admitted. It states the plaintiff's financial situation, from which the jury

could infer that he must have had in mind his assets and liabilities, yet no mention is made of any debt due from the testator, and it closes with an acknowledgment of checks 'representing gifts or loans previously received.

The testator's letter of October 24, 1902, and the portion in brackets of his letter to one Burr, were excluded properly. The transactions referred to in the first letter cannot be said, even in a remote degree, to have any reference to the plaintiff's inability to support himself. It is not contended that at this period he had become dependent upon the testator for the means of subsistence. The statement in the letter to Burr, that the agreements with the plaintiff had been abrogated, even if the contract in question may have been included,— a matter of much doubt,— is only an expression of opinion by which the plaintiff would not be bound. *Brightman* v. *Buffinton*, 184 Mass. 401. *Parrot* v. *Mexican Central Railway*, 207 Mass. 184.

The will and codicil also were inadmissible. The, cause of action rests upon a contract in writing and not upon an oral promise of the testator. R. L. c. 175, § 67. *Tripp* v. *Macomber*, 187 Mass. 109, 113. Nor can the testamentary provisions for the plaintiff be considered declarations of a deceased person, under R. L. c. 175, § 66. *O'Driscoll* v. *Lynn & Boston Railroad*, 180 Mass. 187. *Randall* v. *Claflin*, 194 Mass. 560. If the testator had been living it would not have been competent for him to have given evidence of the disposition of his estate, or the manner in which the plaintiff's share to be held in trust should be ascertained and the income for life paid to him.

It is, however, urged by the plaintiff that, even if error appears, the evidence excluded should be regarded as cumulative in character and hence its exclusion was discretionary with the presiding judge. *Parker* v. *Hardy*, 24 Pick. 246, 248. *Bradish* v. *State*, 35 Vt. 452, 456. Wigmore on Ev. § 1907. While subjected to an exhaustive cross-examination in which he seems to have fully and unequivocally disclosed everything which had taken place, the plaintiff testified in redirect examination and in explanation of the admitted letters, that because he had to obtain funds in any way he could to support himself and family he had repeatedly asked his father for assistance, although he still considered the contract "was good," and that after making a de-

mand on two occasions for payment of what remained due, and payment having been refused, he again, from sheer necessity, continued to solicit funds throughout the time shown by the letters in evidence. The letter of March 2, 1906, may be said to be of the same general tenor as the plaintiff's admissions in the other letters. Its exclusion would not be sufficient to set aside the verdict. *Gardner* v. *Mitchell,* 6 Pick. 114.

But the statements of the plaintiff's financial condition made in contemplation of bankruptcy appear only in his letter of November 16, 1906. The jury might have been satisfied that the absence therein of any reference to the debt now claimed tended to contradict the plaintiff's testimony, that he had demanded payment, as well as to support the defendant's theory of rescission. Whatever might be the conclusion if the question had arisen on a motion for a new trial on the ground of newly discovered evidence, we cannot say as matter of law the contents of this letter are so obviously similar that it should be characterized as purely cumulative. *Gardner* v. *Gardner,* 2 Gray, 434, 443. *Perkins* v. *Rice,* 187 Mass. 28, 31.

If because of this error the exceptions must be sustained, there is no merit in the defendant's further contention that the ruling as to interest was wrong. By the terms of the contract, the monthly instalments as they accrued became due and payable and no demand was necessary, and when the entire obligation matured interest commenced from that date on the amount unpaid, as the presiding judge correctly instructed the jury. *Dodge* v. *Perkins,* 9 Pick. 368, 388. *Donahue* v. *Partridge,* 160 Mass. 336.

*Exceptions sustained.*