CATHERINE G. LITTLE, administratrix, *vs.* MASSACHUSETTS NORTHEASTERN STREET RAILWAY COMPANY.

Essex.    March 13, 1916. — April 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Evidence,* Declarations of deceased persons, Opinion.

Under R. L. c. 175, § 66, which provides that "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made [with other requirements] upon the personal knowledge of the declarant," a declaration of opinion by a deceased person cannot be admitted, even when such person, if living, would be allowed to testify to the opinion inquired about.
In an action by an administrator against a street railway company for causing the death of the plaintiff's intestate, the physician who treated the intestate after the injury that was alleged to have caused his death was not living at the time of the trial, and the plaintiff was allowed, subject to the defendant's exception, to answer the question, "What did [the deceased physician] say was the cause of his [the intestate's] condition?" To which the plaintiff answered,

---

"He said the accident, being thrown out of the carriage." There had been evidence that the intestate for a long time before the accident had been suffering from hardening of the arteries, which might have resulted in his death even if the accident had not happened. *Held,* that the admission of the question and the answer in regard to the opinion of the physician was harmful error which required the sustaining of the exception.

TORT, by the administratrix of the estate of Edwin C. Little, for the suffering and death of the plaintiff's intestate alleged to have been caused by the negligence of the defendant's servants on September 21, 1911, in operating a car of the defendant on the highway running between the towns of Merrimac and Amesbury noisily, improperly and recklessly, whereby the horse that was being driven by the plaintiff's intestate was frightened and made to run away, throwing the plaintiff's intestate from his seat in the carriage and causing the injuries that resulted in his death; the first count of the declaration being for suffering of the plaintiff's intestate and the expense he was put to for medical treatment and medicines, and the second count being for negligently injuring the plaintiff's intestate on September 21, 1911, so seriously that he died as the result of his injuries on May 5, 1912. Writ dated August 27, 1912.

In the Superior Court the case was tried before *Sisk,* J. It appeared that Dr. Pierce, mentioned in the opinion, who died before the trial, was the family physician of the plaintiff's intestate and had treated him for rheumatism and asthma before the accident; that about a week or ten days after the accident Dr. Pierce was called to treat the intestate and continued to treat him professionally until April 2, 1912, calling upon him from seventy-five to one hundred times.

Dr. Clark, who was called as a witness by the plaintiff, had examined the plaintiff's intestate on March 2, 1912, in consultation with Dr. Pierce. The bill of exceptions stated: "Dr. Clark testified that he obtained the history of the case and of the accident from Mr. Little [the plaintiff's intestate] and from Dr. Pierce; that it was his opinion that Mr. Little was, and for a long time prior to the accident had been, suffering from hardening of the arteries; and that Dr. Pierce agreed with that opinion."

The plaintiff, who was the widow of the intestate, testified "that before the accident her husband was a hardworking, active man and carried on a farm in West Newbury; that from the day

of the accident to the day of his death he did no work; was confined most of the time to the house and much of the time to his bed; suffered a great deal of pain in his back and side; found it difficult to sleep; had much difficulty in getting about the house and grew steadily worse until he died."

After testifying that Dr. Pierce was dead, she was asked the question, "While Dr. Pierce was treating Mr. Little, did Dr. Pierce tell you what was the cause of his condition?"

The defendant objected to the question, and the judge ruled that it was competent and permitted it to be answered, subject to the defendant's exception. The question then was repeated in the following form: "What did Dr. Pierce say was the cause of his condition?" The plaintiff answered, "He said the accident, being thrown out of the carriage." No question was raised but that the declaration was made by Dr. Pierce in good faith before the commencement of the action.

The jury returned a verdict for the plaintiff, assessing damages on the first count in the sum of $1,670 and on the second count in the sum of $3,500.

R. L. c. 175, § 66, is as follows: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

*J. J. Ryan,* for the defendant.

*E. S. Underwood,* for the plaintiff.

DE COURCY, J. Dr. Pierce, who had treated the plaintiff's intestate after the accident, was not living at the time of the trial. Subject to the defendant's exception, the plaintiff was permitted to answer the question, "While Dr. Pierce was treating Mr. Little, did Dr. Pierce tell you what was the cause of his condition?" The purpose was to disclose the opinion expressed by the physician either as to the nature of the ailment from which his patient was suffering or as to the cause which was responsible for that condition.

It may be assumed, as urged by the plaintiff now and at the trial, that if Dr. Pierce were living he would be permitted as attending physician to give certain opinion evidence in connection with the facts coming under his observation, without qualifying as an expert. See *Hastings* v. *Rider,* 99 Mass. 622. But it does

not necessarily follow that the statement of an opinion expressed by him would be admissible under the statute.

Declarations of deceased persons, in order to be admissible under R. L. c. 175, § 66, must have been made, not only in good faith, but "upon the personal knowledge of the declarant." In general they must be derived from the exercise of the declarant's own senses as distinguished from opinions based upon data observed by him or furnished by others. While it often is difficult to trace the logical or legal distinction between facts and opinions (see Wigmore on Evidence, § 1919), this court, in construing the statute, has recognized that where the declaration admittedly is one of opinion it is not admissible. *Slotofski* v. *Boston Elevated Railway*, 215 Mass. 318, 321. *Whitcomb* v. *Whitcomb*, 217 Mass. 558. *Johnson* v. *Foster*, 221 Mass. 248, 251. *Gray* v. *Kelley*, 190 Mass. 184. In the present case the facts on which the trial judge admitted the question are undisputed, and the admissibility of the declaration is before us for review on the defendant's exception. *Ames* v. *New York, New Haven, & Hartford Railroad*, 221 Mass. 304. It seems plain that the question called for a statement of Dr. Pierce's opinion and not for any information within his "personal knowledge," even if it was asked in order to bring out the physician's diagnosis. If it was designed to evoke the answer actually given by the witness, it was open to the further objection that the opinion it called for was not even a medical one, on which the physician presumably could testify if he were living. After the judge had ruled that the question was admissible, it was put to the plaintiff in the form, "What did Dr. Pierce say was the cause of his condition?" and the answer given was, that the cause of the condition of his patient was "the accident, being thrown out of the carriage." It is not contended that Dr. Pierce witnessed the accident, or had any personal knowledge that Mr. Little was thrown from his carriage.

We are unable to say that the error in admitting the declaration did not injuriously affect the substantial rights of the defendant. The main issue under the second count was whether the accident was the cause of the death of the plaintiff's intestate. There was evidence that for a long time before this occurred he had been suffering from hardening of the arteries, which might have resulted in his death even if the accident had not happened. The state-

ment of the attending physician, to the effect that the cause of Mr. Little's dying condition was not the hardening of his arteries but the fall from his carriage, may have had a controlling influence on the verdict of the jury.

It follows that the entry must be

*Exceptions sustained.*