KaplaN, Mitchell H., J.
The plaintiff, Corrine Rosseel (“Rosseel”), brings this wrongful termination action against her former employer, The Fay School (the “Fay School” or the “school”), and three of its managers, Steve White (“White” — the head of the Fay School), Sarah McMillan (“McMillan” — the head of the Upper School), and Andrew Carlson (“Carlson” — the director of the international student program). The complaint alleges six counts: (I) termination of Rosseel’s employment in violation of G.L.c. 119, §5 LA,[2] (II) termination in retaliation for actions protected by G.L.c. 149, §185, (III) violation of the Sarbanes-Oxley Act, (IV) the creation of a hostile work environment, (V) intentional infliction of emotion distress, and (VI) intentional interference with contractual relations. The matter is before the court on the defendants’ motion to dismiss all six counts pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion is ALLOWED in part and DENIED in part.

BACKGROUND

The complaint alleges the following facts. From August 2004 to April 2006, Rosseel taught English as a second language in the Fay School’s international student program. Beginning in October 2004, Rosseel notified several school officials about incidents of physical and emotional abuse by certain students directed at other students. In October 2004, a student at the school informed Rosseel that his dormitory roommate was being bullied and abused by other students. Rosseel reported the student’s complaint to her acting supervisor in the international program, Suzanne Walker Buck, and the supervisor of residential affairs, Andrew Long. In December 2004, Rosseel again notified Buck and Long about an incident in which a student in the school’s ski program physically threatened another student.
In January or February 2005, a 9th grade female student was assaulted on school grounds by an adult, the sister of the acting dean of students, John Churchill. The school’s headmaster, defendant White, wrote a letter to the assailant’s parents stating that he considered contacting the police but opted not to because he valued the relationship of the family to the school. Rosseel met with Churchill and Buck separately to discuss this incident, as she was concerned about ongoing bullying at the school and the lack of school intervention.
In the summer of 2005, Rosseel met with Scott LeBrun, the new dean of students. She asked why the school had not reported any of the ongoing abuse to the Department of Social Services (now known as the Department of Children and Families (“DCF”)). In September 2005, Rosseel met with the new director of the international program, defendant Carlson. She expressed concern about bullying and abuse on campus and suggested that a doctor who had conducted research on bullying be invited to the school to discuss the effects of such.
In October 2005, Rosseel met with Carlson to discuss her goals for the year. He told her that her goals for the year were too broad. In November 2005, Carlson issued a warning letter to Rosseel, although its contents and the reasons for the warning are not alleged.
Between December 2005 and February 2006, Rosseel unsuccessfully attempted to meet with the headmaster of the “Upper School” at the Fay School, defendant McMillan, concerning her feelings that Carlson had created a “hostile work environment.” In March 2005, when Rosseel met with school officials about her contract, she was informed that her employment would not be renewed for the following academic year.

DISCUSSION

When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that may be drawn in the plaintiffs favor. Berish v. Bornstein, 437 Mass. 252, 267 (2002). To survive a motion to dismiss, a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level ...” Id. quoting Bell Atl. Corp., 127 S.Ct. at 1964-65. At the pleading stage, a complaint must set forth “factual *517 ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief.. Id., quoting Bell Atl. Corp., 127 S.Ct. at 1966.
At oral argument, Rosseel conceded that for the reasons stated in the defendants’ memorandum of law, Counts II, III, IV, and V of her complaint do not state claims upon which relief may be granted.[3] In consequence, the discussion that follows only addresses the legal sufficiency of Count I, which alleges retaliatory termination in violation of G.L.c. 119, §51 A, and Count VI, which alleges intentional interference with contractual relations.

1. Termination in violation of G.L.c. 119, §51A

General Laws c. 119, §51A provides a civil remedy, set forth in the margin, to a person who is terminated or retaliated against by her employer for reporting an incident of abuse or neglect in the manner required by the statute.[4] The defendants contend that §51A only provides a remedy for those who report abuse directly to DCF, and Rosseel therefore has failed to state a claim under §51A.[5]
Concerning the duty and method of reporting, §51 A, as was in effect at the time of the events alleged in the complaint,[6] provides the following:
Any . . . private school teacher . . . who, in the exercise of [her] professional capacity shall have reasonable cause to believe that a child under the age of eighteen years is suffering physical or emotional injury resulting from abuse inflicted upon him which causes harm or substantial risk of harm to the child’s health or welfare ... shall immediately report such condition to the department by oral communication and by making a written report within forty-eight hours after such oral communication: provided, however, that whenever such person so required to report is a member of the staff of a medical or other public or private institution, school or facility, [she] shall immediately either notify the department or notify the person in charge of such institution, school or facility, or that person’s designated agent, whereupon such person in charge or his said agent shall then become responsible to make the report in the manner required by this section.
G.L.c. 119, §51A (emphasis added).
In the case at bar, Rosseel alleges that she notified deans Churchill and LeBrun, and supervisor of residential affairs Long, of bullying and abusive behavior directed at certain Fay School students. The court cannot say as a matter of law that the individuals to whom she reported this behavior did not meet the statutoiy definition of designated agent. Section 51A provides a remedy to a mandated reporter who suffers discharge or other retaliatory action by reason of having made a report of abuse upon a child. This section simply does not state that the report must be made to DCF rather than the designated person at a school. Rosseel’s allegations are sufficient, at this stage of the litigation, to state a cause of action for wrongful termination in violation of G.L.c. 119, §51 A, against the Fay School.

2. Intentional interference with contractual relations

In a claim for intentional interference with contractual relations, an employee’s supervisor enjoys a privilege to act within the scope of his or her employment responsibilities unless they do so “out of malevolence, that is, with ‘actual’ malice.” Blackstone v. Cashman, 448 Mass. 255, 260-61 (2007), quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 (1981).[7] “Actual malice” in this context means “a spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). Here, the complaint makes no allegation that any of the three individual defendants acted towards Rosseel out of malevolence or with actual malice. The complaint simply includes no factual allegations which plausibly suggest that the defendants acted with malice or spiteful, malignant purpose unrelated to the legitimate" interests of the Fay School. Indeed, read in the light most favorable to Rosseel, the allegations might be construed to suggest that the defendants decided not to renew Rosseel’s contract to protect the Fay School from Rosseel’s disclosure of bullying and abuse occurring there. That might be misguided action on their part, but it is no evidence whatsoever, that they acted out of malice towards Rosseel. For this reason, the complaint fails to state a claim for intentional interference with contractual relations.[8]

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss is ALLOWED as to Counts II, III, IV, V and VI, and DENIED as to the Fay School in Count I, but allowed as to the individual defendants.

Although this Count is phrased as a common law “violation of public policy,” statutoiy remedies such as that provided under §51A are the exclusive remedy when available. See Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 511-13 (1985), aff'd, 397 Mass. 1004 (1986).

As to Count II, Rosseel does not allege, nor was she, a public employee and, therefore, G.L.c. 149, §185 is inapplicable. Count III fails to state a claim under the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, because Rosseel does not allege that she provided “a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense.” 18 U.S.C. §1513(e). Count IV alleges “hostile work environment,” but there is no allegation that Rosseel filed a complaint with the Massachusetts Commission Against Discrimination within 300 days of the alleged acts of discrimination. See G.L.c. 151B, §5; Charland v. Muzi Motors. Inc., 417 Mass. 580, 583-84 (1994). Finally, Rosseel’s claim for intentional infliction of emotional distress, Count V, is barred by the exclusivity provision of the workers’ compensation act. See Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996).

“No employer of those persons required to report pursuant to this section shall discharge, or in any manner discriminate or retaliate against, any person who in good faith makes such a report, testifies or is about to testily in any proceeding involving child abuse or neglect. Any such employer who discharges, discriminates or retaliates against such a person shall be liable to such person for treble damages, costs and attorneys fees.”

The defendants cite Gallagher v. Episcopal Diocese of Massachusetts, Memorandum of Decision and Order Pursuant to Rule 1:28, 68 Mass.App.Ct. 1120 (2007). However, in Gallagher, the plaintiff was not a mandated reporter under §51A and, more importantly, the Court did not address that part of §51A that permits a mandated reported to notify a “person in charge” of a “medical or public or private institution, school or facility,” or their designated agent.

See Marks v. Department of State Police, 74 Mass.App.Ct. 219, 224 (2009) (“A statute operates prospectively only, unless the legislative intent is unequivocally clear that the application should be retroactive”).

“To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant’s interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.” Blackstone, 448 Mass. at 260.

A1so, as the defendants’ state in their memorandum of law, the Fay School cannot be liable for interference with its own contract. See Mailhoit v. Liberty Bank & Trust Co., 24 Mass.App.Ct. 525, 528 (1987).